# AFFIDAVIT OF SPECIAL AGENT CHRISTINA ROSEN IN SUPPORT OF CRIMINAL COMPLAINTS AND ARREST WARRANTS

I, Christina Rosen, having been duly sworn, do hereby depose and state as follows:

## Agent Background

1. I am employed as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations in Boston, Massachusetts. I have been employed by the United States government as a Special Agent since October 2007. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia, and have received extensive training in criminal investigation procedures and criminal law. In 2005, I graduated from Northeastern University with a Bachelor's degree in Criminal Justice. In 2006, I graduated from Boston University with a Master's degree in Criminal Justice. My responsibilities as a Special Agent with DOL-OIG-OI include investigating fraud, waste and abuse of Department of Labor programs, employees, and departments. During my tenure as a Special Agent, I have conducted investigations of several types of criminal activity including work visa fraud, unemployment insurance fraud, false claims fraud, employee benefits fraud, identity theft and money laundering. During the investigation of these cases, I have participated in the execution of search and arrest warrants and have seized evidence as evidence, fruit, or instrumentalities of violations of federal law.

2. Along with federal agents with Homeland Security Investigations, I am currently investigating Tiffany Pacheco (*a/k/a* Tiffany Tavery, *a/k/a* Tiffany Wolfe) ("TIFFANY") and Arthur Pacheco ("ARTHUR") in connection with various suspected federal criminal offenses. As set forth below, I have probable cause to believe that TIFFANY and ARTHUR have conspired to obtain Pandemic Unemployment Assistance ("PUA") funds via fraudulent means and have utilized

1

various interstate wires in furtherance of this fraud. This affidavit is being submitted in support of criminal complaints charging TIFFANY with violating 18 U.S.C. § 1343 (wire fraud), and charging TIFFANY and ARTHUR with violating 18 U.S.C. § 1349 (conspiracy to commit wire fraud), and in support of arrest warrants for TIFFANY and ARTHUR.

3. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaints and arrest warrants and does not set forth all of my knowledge about this matter.

## Background

4. As set forth in more detail below, this investigation has established that TIFFANY, while an employee of the Massachusetts Department of Unemployment Assistance ("DUA"), used her access to the DUA system to fraudulently obtain unemployment benefits to which she was not entitled, and to fraudulently obtain unemployment benefits for ARTHUR to which he was not entitled. The investigation has further established that ARTHUR, during phone calls to DUA, lied about when he had been incarcerated in an effort to obtain unemployment benefits for a period of time that included several months when he had in fact been incarcerated.

5. Court and law enforcement records indicate that TIFFANY was convicted of aggravated identity theft in 2017 in the U.S. District Court for the Western District of Texas and was sentenced to two years of imprisonment plus a term of supervised release. In March 2019, TIFFANY's federal supervised release was revoked based, in part, on her passing of numerous fraudulent checks, and she was sentenced to serve an additional 12 months in federal prison. *See* Case 5:16-cr-00806, Docket 43 (W.D. Tex.). TIFFANY was released from Bureau of Prisons

("BOP") custody on or around February 19, 2020.

6. Court and law enforcement records indicate that ARTHUR was incarcerated in Texas from on or about April 12, 2019 until September 4, 2020. On or about September 4, 2020, ARTHUR was granted parole and released under conditions of supervision. On or about September 5, 2020, ARTHUR reported to the parole office in Massachusetts. On September 22, 2020, ARTHUR was arrested for a parole violation. On or about November 6, 2020, ARTHUR was released from incarceration and placed back on parole. On or about November 12, 2020, ARTHUR reported to the parole office in Texas. I understand from information provided by Texas parole that ARTHUR's conditions include that he not leave Texas.

7. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a new temporary federal program unemployment insurance program called PUA. PUA provides unemployment insurance ("UI") benefits for individuals who are not eligible for other types of unemployment (e.g., self-employed, independent contractors, gig economy workers). PUA will provide unemployment payments for unemployment beginning on or after January 27, 2020 and ending before December 31, 2020 for a maximum payment of 39 weeks. On or about August 11, 2020, all recipients of PUA were granted 7 weeks of Extended Benefits extending maximum payment weeks to 46.

8. DUA administers and manages the PUA program in the Commonwealth of Massachusetts. In Massachusetts, the PUA minimum weekly benefit allowance is $267. The PUA weekly benefit allowance can increase but may not be more than Massachusetts' maximum weekly benefit rate for regular unemployment benefits of $855.00[1].

---

[1] Prior to October 4, 2020, the maximum benefit amount for both UI and PUA in Massachusetts was $823.

9. The CARES Act also created a new temporary federal program called Federal Pandemic Unemployment Compensation ("FPUC") that provides an additional $600 weekly benefit to those eligible for PUA and/or regular UI. Claimants were eligible to receive FPUC monies in addition to the PUA or UI benefit from February 8, 2020 to July 25, 2020.

10. As of August 1, 2020 to September 5, 2020, PUA and UI claimants were eligible to receive Federal Lost Wages Assistance ("FLWA") in the amount of $300 per week funded by the Federal Emergency Management Agency ("FEMA").

11. A summary chart of the above benefits is as follows (all figures approximate):

| State/Federal Benefit | Weekly Benefit Range | Application Reqts. |
|---|---|---|
| **UI** – Unemployment Insurance | $52-855 | SSN; DOB; address, U.S. citizen or work authorization; willing and available to work; no fault unemployment; wages reported by employer to DUA; payment preference (DD or Pre-Paid Debit Card) |
| **PUA** – Pandemic Unemployment Assistance | $267-855 | SSN; DOB; address, U.S. citizen or work authorization; willing and available to work; eligible under PUA guidelines; payment preference (DD or Pre-Paid Debit Card) |
| **FPUC** – Federal Pandemic Unemployment Compensation | $600 | Must have an approved PUA or UI claim |
| **FLWA** – Federal Lost Wage Assistance | $300 | Must have an approved PUA or UI claim |

12. As part of the PUA application process, a claimant must provide first and last name, Social Security number ("SSN"), Date of Birth and a home address. In addition, the claimant must select preferred payment method: Direct Deposit or Debit Card.

13. PUA claims submitted via DUA are processed via a server in Colorado. PUA claims are frequently submitted via the internet, and I understand that individuals who submit PUA-related information to DUA via the internet cause wires to be transmitted to and/or from

4

this Colorado-based server.

14. Before receiving PUA via DUA, a claimant must verify their identity which includes a combination of personal identifying information and internet protocol address, email and/or bank account information previously used with either the Massachusetts Department of Revenue and/or the Massachusetts Registry of Motor Vehicles. If verification is not met, an ID verification is placed on a claim. To overcome this, a claimant must provide proof of SSN, identification and address. Proof of SSN may include Social Security card or tax form. Proof of identification may include a driver's license or passport.

## Seizure of Identity Fraud Evidence

15. On September 22, 2020, Massachusetts Parole Officers conducted a search of an apartment in New Bedford, Massachusetts (the "Residence") in connection with ARTHUR's parole conditions.  Parole officers encountered TIFFANY in the Residence. Parole officers also encountered evidence of identity fraud, including mail addressed to other parties, SSNs of other parties, and blank bank cards containing chips. Subsequently, a Massachusetts search warrant issued permitting the search of the Residence for evidence of identity fraud and larceny.

16. During the search of the Residence, investigators encountered and seized various items that are indicative of fraud / stolen identity schemes, including but not limited to an ID card die cutter, an ID laminator, synthetic paper, approximately 100 blank ID cards, approximately 649 sheets of blank checks, approximately 68 hologram overlays, and approximately 150 card lamination sheets.  Agents also located approximately $17,000 cash and a notebook that appeared to contain the personal identifying information ("PII") of various individuals.

17. During the search of the Residence, investigators also encountered and seized a notebook that appeared to contain instructions for perpetrating various criminal schemes, including

schemes involving counterfeit checks, credit card fraud, blackmail, mail theft, shell companies, charitable solicitations, fake driver's licenses, and bank fraud.

### TIFFANY's Employment at DUA

18. On or about March 24, 2020, TIFFANY applied for a position with MA DUA as a temporary "Job Service Representative I." As part of the application process, TIFFANY completed an online application and submitted a resume. In the application, TIFFANY stated she was currently a freelance legal researcher assisting "federal and state inmates with conducting research and filing post-conviction motions." TIFFANY listed her previous employment, the most recent being an Adult GED/ACE Teacher/Tutor at Hazelton from October 2017 to February 2020. An internet search of the contact information listed for this employer identified the facility as FCI [Federal Correctional Institution] Hazelton in West Virginia, a BOP facility where TIFFANY had been incarcerated.

19. On April 16, 2020, DUA offered TIFFANY employment. On April 21, 2020, TIFFANY began her employment with DUA in a work-from-home capacity. Initially, TIFFANY's employment only granted her access to the regular UI system at DUA. On or about July 7, 2020, TIFFANY was granted access to the PUA system as part of her normal duties.

20. According to DUA, TIFFANY's job duties consisted of operating as a customer service representative by taking calls from claimants. Furthermore, according to DUA, TIFFANY and other employees in the same position were never trained to make alterations or determinations in any claim account as this was never intended to be part of their job duties[2]. DUA repeatedly instructed TIFFANY, and other employees in the same position, to not make any determinations

---

[2] According to DUA, while TIFFANY's system access would allow her to make alterations and determinations on claims, she was never trained to do so and specifically instructed not to.

6

in claim accounts unless they obtain case by case approval from management. DUA instructed TIFFANY, and other employees in the same position, to notate any claim issues and then refer such issues up the chain for review.

21. From April 21, 2020 to September 23, 2020, TIFFANY was employed by DUA in a fulltime capacity at an hourly rate of $25.84 for 37.5 hours per week. On September 23, 2020, TIFFANY was terminated by DUA.

### Fraudulent PUA Claims

22. On June 16, 2020, a PUA claim was filed for TIFFANY and 39 minutes later, a PUA claim was filed for ARTHUR. At that time, ARTHUR was incarcerated in Texas.

23. TIFFANY's PUA claim (A00-000-0755-1716) included phone number xxx-xxx-8096, SSN xxx-xx-0839, DOB xx/xx/1985, Massachusetts State ID SAxxx0541, and an address in Taunton, MA ("Residence II").

24. On June 17, 2020, in response to an identity verification issue on her claim, TIFFANY uploaded a photo of a Social Security Card with SSN xxx-xx-0839, a Massachusetts State ID SAxxx0541, and a selfie depicting her holding State ID SAxxx0541.

25. ARTHUR's PUA claim (A00-000-0738-1171) included phone number xxx-xxx-8093, SSN xxx-xx-8905, DOB xx/xx/1973, and an address of [Residence II] Taunton, MA.

26. On June 29, 2020[3], in response to an identity verification issue on the claim, the following documents were uploaded to ARTHUR's claim:

   a. Texas Renewal or Replacement Receipt and Temporary Driver License for Arthur paid for June 21, 2020 by TIFFANY with a billing address of [Residence II], Taunton, MA;

---

[3] On the date these documents were submitted to DUA in support of ARTHUR's PUA claim, ARTHUR was incarcerated in Texas.

7

      b.      Birth certificate for ARTHUR;

      c.      2019 Tax Return for TIFFANY and ARTHUR[4];

      d.      Health insurance card for ARTHUR; and

      e.      Two selfie photographs depicting ARTHUR holding a Texas Identification card and one close up photograph of card.

27. Based on information obtained from DUA, it appears that, between July 13, 2020 and August 17, 2020, TIFFANY used her official access to make changes to both her and her husband's PUA claim accounts. Various changes to these PUA claims caused an increase in weekly benefit allowance, increase in monetary additions, and caused multiple previous weeks of benefits to be immediately issued. TIFFANY further used her access to the PUA system to verify the increased reported 2019 income on both claims without the required income verification documents.

28. Based on the review of records relating to the PUA claims of TIFFANY and ARTHUR, and knowledge obtained during this investigation, I believe that TIFFANY obtained PUA funds via fraud. As reflected below, the information reported to DUA concerning the 2019 income and number of dependents for TIFFANY and ARTHUR was later changed drastically, and in a manner to increase PUA eligibility. Based on my training and experience, I believe that these drastic changes to the reported amounts of 2019 income and number of dependents are indicative of fraud, rather than any actual changes to the 2019 income or number of dependents for TIFFANY or ARTHUR. Moreover, TIFFANY was actively employed in a fulltime capacity with DUA at the time her PUA claim was filed and throughout the claim period. Individuals who are employed

---

[4] This 2019 tax return showed $0 income for both TIFFANY and ARTHUR. In addition, this tax return listed no dependents for both TIFFANY and ARTHUR.

and/or being fully compensated by their employer are not eligible to receive PUA benefits.

29. DUA records reflect the following activity in connection with TIFFANY's PUA claim:

    a. June 16, 2020 - Initial claim listed reported 2019 income of $0; Monetary Determination established claimant eligible for minimum weekly benefit amount of $267 for 39 weeks; identified 0 dependents; and first date impacted was February 16, 2020.

    b. July 23, 2020 - TIFFANY changed the date first impacted to February 2, 2020 and increased number of dependents to 3, which added a $75 weekly dependency allowance. The change in impacted date caused monies to be immediately paid for previously unreported weeks.

    c. July 27, 2020 - TIFFANY changed her 2019 reported income from $0 to $244,542, which caused the PUA weekly benefit amount to increase to the maximum weekly benefit amount of $823.

    d. August 17, 2020 - TIFFANY increased the amount of dependents to 7, increasing the dependency allowance to $175 per week. Extended Benefits granted another 7 weeks of benefits.

- According to DUA records, on August 17, 2020, TIFFANY utilized her DUA access in the PUA system to approve the monetary adjustment due to the increased number of reported dependents.

30. DUA records reflect the following activity in connection with ARTHUR's PUA claim:

    a. June 16, 2020 - Initial claim listed reported 2019 income of $0; Monetary Determination established claimant eligible for minimum weekly benefit amount of $267 for 39 weeks; identified 0 dependents; and first date impacted was March 22, 2020.

    b. July 13, 2020 - Claimant changed date first impacted to February 13, 2020.

    c. July 23, 2020 - Claimant changed impacted date to February 2, 2020 and increased the amount of dependents to 5, increasing the dependency allowance to $125 per week.

    d. July 27, 2020 - Claimant changed his 2019 reported income from $0 to $198,973, which caused the PUA weekly benefit amount to increase to the maximum weekly benefit amount of $823.

  e.  August 17, 2020 - Claimant increased the amount of dependents to 7, increasing the dependency allowance to $175 per week. In addition, the reported 2019 income was changed to $272,137.76 and $330,658.22[5]. Extended Benefits granted another 7 weeks of benefits.

- According to DUA records, on August 17, 2020, TIFFANY utilized her DUA access in the PUA system to approve the monetary adjustment due to the increased number of reported dependents and to verify the income adjustment on ARTHUR's claim without the required proof of income documentation.[6]

31. Based on the above information submitted to DUA, DUA released a total of $45,932 ($34,530 in PUA, $10,200 in FPUC, $1,800 in FLWA) on TIFFANY's PUA claim. In addition, DUA released $48,926 ($36,926 in PUA, $10,200 in FPUC, $1,800 in FLWA) on ARTHUR's PUA claim.

32. The PUA system tracks all activity associated with each registered account, and DUA maintains documentation of activity related to claimant accounts, to include but not limited to, employee access and activity on accounts. Included in those records are the IP addresses used by the computer that initiated activity on this account.[7] DUA records reflect various claimant

---

[5] This increase of reported income had no effect on amount of monies distributed on the claim. A reported 2019 income of $87,000 or more qualifies claimant for maximum weekly benefit amount.

[6] As noted above, on August 17, 2020, ARTHUR was serving a term of incarceration in Texas.

[7] An Internet Protocol ("IP") address is a numerical label assigned to each device participating in a computer network that uses the Internet Protocol for communication. Computers on the Internet identify each other by an IP address. IP addresses can assist law enforcement in finding a particular computer on the Internet, in that IP addresses can typically lead law enforcement to a particular Internet service company and that company can typically identify the account that used the IP address to access the internet.

logons between in or around June 2020 and in or around October 2020 for the PUA claims of TIFFANY and ARTHUR, and show the IP addresses associated with these logons.

33. On August 17, 2020, DUA logged IP address 73.47.91.78 with the above listed activity on the PUA claim accounts for TIFFANY and ARTHUR.[8] Through publicly available databases, this IP address was identified as belonging to Comcast Cable Communications, Inc. ("Comcast"). A review of Comcast records provided the subscriber information for that account, as follows:

| | |
|---|---|
| Subscriber Name: | Tiffany Pacheco |
| Service Address: | [the Residence] |
| Billing Address: | [Residence II] |
| Telephone #: | xxx-xxx-8096; xxx-xxx--9871 |
| Type of Service: | High Speed Internet Service |
| Account Number: | xxxxxxxxxxxx2882 |
| Account Status: | Disconnected 11-05-2020 |
| IP Assignment: | Dynamically Assigned |

34. On August 17, 2020, DUA logged IP address 73.47.91.78 with TIFFANY's activity on her DUA employee access in both her own and ARTHUR's PUA claim account. This activity included, but is not limited to, approval of monetary adjustments due to increased number of reported dependents and an increase in 2019 reported income.

35. Based on the monetary adjustments for the PUA claims of TIFFANY and ARTHUR on August 17, 2020, DUA released $2,348 additional monies on ARTHUR's claim and $3,698 additional monies on TIFFANY's claim.

---

[8] DUA records indicate that the accounts for TIFFANY and ARTHUR were accessed within minutes of each other.

**Review of Bank Records**

36. According to DUA records, TIFFANY's PUA claim listed three bank accounts for benefits to be deposited. ARTHUR's PUA claim listed the same three bank accounts as TIFFANY's claim plus two additional bank accounts for benefits to be deposited.

37. Two of the bank accounts used for TIFFANY and ARTHUR's PUA claims were with Sutton Bank (#xxxxxxxxx1633 and #xxxxx5663). Sutton Bank has produced records relating to an account in the name of Tiffany Nicole Pacheco, address [the Residence] in New Bedford, MA, phone number xxx-xxx-8096, with a card recipient address of Tiffany Pacheco at [Residence II], Taunton, MA. Sutton Bank records concerning this account show various PUA direct deposits issued to TIFFANY and ARTHUR. These records show that, between July 2, 2020 and October 21, 2020, this account received 126 PUA deposits totaling $41,177.

38. According to DUA, a Stride Bank account (#xxxxxxxx9552) was listed in connection with the PUA claims of TIFFANY and ARTHUR. Stride Bank has produced records relating to an account in the name of Tiffany Pacheco, address [the Residence], New Bedford, MA, phone number xxx-xxx-8096. These records show that, between July 14, 2020 and August 11, 2020, this account received 29 DUA deposits totaling $18,522.

**Representations to DUA in November 2020**

39. DUA denied the PUA claims for TIFFANY and ARTHUR on or about October 14, 2020. From the date of TIFFANY's termination at DUA to the denial of both claims accounts, TIFFANY filed for PUA for one additional week and ARTHUR filed for four additional weeks. On or about October 23, 2020, an appeal was filed with DUA to review the denial of ARTHUR's claim. On November 18, 2020, DUA dismissed the appeal.

40. I understand that incarcerated persons are not eligible to receive PUA funds for

periods during which they are incarcerated. The PUA claim submitted in ARTHUR's name sought PUA funds for the approximate timeframe of February 2, 2020 through October 17, 2020. As noted above, ARTHUR was incarcerated from on or about April 12, 2019 until September 4, 2020, and was again arrested on September 22, 2020.

41. On November 27, 2020, DUA recorded three calls from ARTHUR and/or TIFFANY to DUA regarding ARTHUR's denied claim and appeal:

   a. At 8:54am: ARTHUR inquired about his claim and provided SSN xxx-xx-8905 and confirmed his mailing address of [Residence II], Taunton, MA and DOB xx/xx/1973. ARTHUR informed DUA employee he recently obtained a letter of employment intent and ARTHUR wanted to upload it to his claim. DUA employee informed ARTHUR his claim is currently denied and appeal was dismissed because ARTHUR was incarcerated until September 2020. ARTHUR stated he was not incarcerated until October and only for about a month. ARTHUR repeated it was not accurate that he was incarcerated until September. ARTHUR asked to be transferred to file another appeal. At the end of the call, a female voice said thank you to the DUA employee.

   b. At 9:16am: ARTHUR called and provided his full name and SSN xxx-xx-8905. ARTHUR confirmed his mailing address of [Residence II], Taunton, MA and DOB xx/xx/1973. ARTHUR stated that he has a speech impediment and asked his wife, Tiffany, handle the call. TIFFANY then stated that ARTHUR was incarcerated for four weeks in October and his hearing was cancelled so they cannot upload the intent letter. TIFFANY asked if they would open the link so they can upload the letter. A DUA employee informed TIFFANY and

        ARTHUR that they needed to be transferred to the next level up.

    c.    At 9:33am: ARTHUR provided his full name and SSN xxx-xx-8905. ARTHUR confirmed his mailing address of [Residence II], Taunton, MA and DOB xx/xx/1973. ARTHUR stated he has a few problems, one of which was that he was late uploading the letter of intent and asked for the link to be opened again. ARTHUR explained he had an appeal dismissed because DUA said he was incarcerated until September 2020 and it is not correct as he was only incarcerated for about a month in October. A DUA employee offered that ARTHUR could send the intent via email so that it could be attached to ARTHUR's file. The DUA employee stated he was not able to conduct evaluations, but he could push it to a manager for reevaluation. The DUA employee instructed ARTHUR that, while waiting for management decision, he should apply for the weeks outstanding on the claim. ARTHUR stated that those weeks are when he was incarcerated and the DUA employee told him not to file for those weeks.[9] During the call, a female voice is heard asking questions, reading from the claim screen, and making comments, which are then repeated by ARTHUR on the call.

42.    DUA records show these three phone calls being made from xxx-xxx-8096, a phone number serviced by T-Mobile.

---

[9] Although ARTHUR was incarcerated from on or about September 22, 2020 until on or about November 4, 2020, DUA records reflect certifications made in connection with his claim during this time

## CONCLUSION

43.     Based on the information described above, and my training and experience, I believe that Tiffany PACHECO misused her official position with the Massachusetts Department of Assistance to access and fraudulently alter unemployment assistance claims for herself and her husband. I further believe that:

- a. on or about August 17, 2020, Tiffany PACHECO, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, in violation of Title 18, United State Code, Section 1343; and

- b. on various dates including November 27, 2020, Tiffany PACHECO and Arthur PACHECO conspired with each other to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, in violation of Title 18, United State Code, Section 1349.

Sworn to under the pains and penalties of perjury,

                                    Special Agent Christina Rosen
                                    U.S. Department of Labor
                                    Office of Inspector General

Subscribed and sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 on

December __15__, 2020    4:02 p.m.

Hon. David H. Hennessy
United States Magistrate Judge