UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  Docket No. 1:21-CR-10025-IT |
| TIFFANY PACHECO | ) |
| | ) |
| Defendant. | ) |
| | ) |

# UNITED STATES' SENTENCING MEMORANDUM

The United States hereby provides its position regarding sentencing in this matter, and in addition responds to the Court's Procedural Order (Docket 52, ¶ 10) as follows:

(a)(1)(a):  the United States will not move for a departure or a non-guideline sentence;

(a)(1)(b):  the United States submits that there are no legal questions that require further attention, although the issue of the abuse of trust enhancement is addressed *infra*.

(a)(1)(c):  the United States submits that there are no factual questions that require further attention, and that an evidentiary hearing is not required. Based on a recent discussion with defense counsel, undersigned counsel understands that the defense agrees that no evidentiary hearing is required.

## Case Background

At the outset of the COVID-19 crisis, the federal and state governments mobilized to provide federally-funded Pandemic Unemployment Assistance ("PUA") benefits to support those who were unable to work because of the pandemic. In April 2020, the Massachusetts Department of Unemployment Assistance ("DUA") hired Defendant Tiffany Pacheco as a customer service representative. *See* Revised Presentence Investigative Report dated April 11, 2022 ("PSR") ¶ 10. Thereafter, Defendant engaged in a multi-faceted scheme to fraudulently obtain PUA benefits to which she was not entitled, including by: (a) abusing her job-provided access to the PUA claim system to submit fraudulent claims using stolen identity information;

1

(b) abusing her job-provided access to the PUA claim system to submit fraudulent claims for herself and her husband, Arthur Pacheco ("Arthur"); and (c) inducing a friend to continue her scheme after Defendant was caught, charged, and detained.  Each of these veins of Defendant's scheme is described in more detail below.

(a) Fraudulent Claims Using Stolen Identity Information

Defendant abused her employment-related access to DUA's online PUA claim system to submit and/or make changes to claims for five individuals.  PSR ¶ 28.  By virtue of Defendant's employment, she was able to make (unauthorized) eligibility determinations to prompt the payment of benefits and/or to increase the amount of payments.  *Id*.  It appears that Defendant obtained the personal identifying information ("PII") used for some of these claims independently from her employment with DUA but obtained the PII utilized for two of these claims by virtue of her job.  Defendant possessed images of identification documents for at least two of the supposed claimants.  PSR ¶ 33-34.

DUA paid PUA benefits for four of these five fraudulent claims, totaling $104,697.  PSR ¶ 28 (i) – (iv).  For the fifth claim, DUA would have paid approximately $49,021 had it succeeded.  *Id*., (v).  In addition, DUA rejected benefits of $6,204 in connection with a fraudulent claim that was otherwise successful.  *Id*. (i).  The total loss associated with Defendant's fraudulent claims using stolen identification information is thus $159,922 ($104,697 actual loss plus $55,225 intended loss).

(b) Fraudulent Claims for Defendant and Arthur

Defendant abused her employment-related access to DUA's online PUA claim system to submit and/or make changes on claims submitted in the names of herself and Arthur.  PSR ¶ 12.

For example, by virtue of her employment, Defendant was able to verify falsely reported income in connection with both her claim and Arthur's. *Id.*

While Arthur participated in the fraudulent scheme concerning his own claim, and conspired with Defendant, he was not involved at the outset of the scheme. The claim in Arthur's name was submitted in June 2020, and fraudulent changes to this claim occurred in July and August 2020. PSR ¶ 13. However, Arthur was incarcerated in Texas until early September 2020, and again in Massachusetts from late September to early November. *Id.* ¶¶ 11, 17. After his release in November, Arthur and Tiffany joined together to make false representations to DUA concerning the timing of Arthur's incarceration in connection with an unsuccessful appeal of an eligibility determination. *Id.* ¶ 17.

DUA paid PUA benefits totaling $94,858 on the claims submitted for Defendant and Arthur. PSR ¶ 14. In addition, had the appeal on Arthur's claim succeeded, DUA would have paid an additional $3,992. *Id.* ¶ 20. The total loss associated with these claims is thus $98,850 ($94,858 actual loss plus $3,992 intended loss).

(c) <u>Inducing Donna Wasson to Continue Scheme</u>

Defendant was arrested on a federal complaint in December 2020 and has been detained since that time. PSR p. 2. After her arrest, Defendant instructed Donna Wasson – a friend who resided in Texas – to use the DUA customer portal to access PUA claims for two of the fraudulent claims that Defendant had submitted using stolen identity information. *Id.* ¶ 32. Defendant further instructed Wasson to post as a claimant in order to change a bank account associated associated with that claim and to request back payments. *Id.* Defendant also directed Wasson to a Google Drive account that contained the images of driver's licenses and other documents under certain stolen identities. *Id.* ¶¶ 33-34. Following Defendant's direction,

Wasson called DUA and posed as a claimant, and also accessed posed as claimants to use the DUA customer portal to access certain fraudulent claims. *Id.* ¶¶ 35-37. Wasson was charged, convicted, and has been sentenced to 18 months imprisonment. *Id.* ¶ 6.

## Sentencing Recommendation

The United States will recommend a sentence to include 36 months imprisonment on Counts 1 – 7, 24 months imprisonment on Count 8 (to be consecutive to the sentence imposed on the other counts), 36 months of supervised release, and restitution to DUA in the amount of $199,555.

## Justification for Sentencing Recommendation

The United States respectfully submits that this is an appropriate sentence in consideration of the guideline sentencing range and the various factors enumerated at 18 U.S.C. § 3553(a).

As will be further addressed at the sentencing hearing, a sentence within the guideline sentencing range but above its low-end is appropriate in this case in light of factors including: (a) the Defendant's exploitation of the COVID-19 pandemic and of her employment in a capacity intended to ameliorate the harms caused by this pandemic; (b) Defendant's prior criminal history, which includes a prior federal conviction for Aggravated Identity Theft; (c) Defendant's continuation of her scheme even after being caught, charged, and detained pending trial; and (d) Defendant's apparent intent to engage in broader identity fraud, as evidenced by certain materials seized from her residence.

In addition, in imposing sentence, the Court should consider the considerable harms suffered by victims of identity theft. For example, studies conducted by the Identity Theft Resource Center reflect that many victims of identity theft report suffering financial-related

problems including being turned down for loans or being unable to secure housing. *See* www.idtheftcenter.org/publication/identity-theft-the-aftermath-study (last accessed April 15, 2022). Many who were victimized by pandemic-related identity fraud in 2020 reported that their issues were still unresolved as of April 2021. *Id*. Many victims of pandemic-related identity theft have reported being denied unemployment benefits because someone applied using their information (24% of reporting individuals), being more stressed than usual (54%), or feeling violated as a result of the identity theft (54%). *See* www.idtheftcenter.org/wp-content/uploads/2021/05/2021-ITRC-Consumer-Aftermath-Responses-Pandemic-Related.pdf (last accessed April 15, 2022). The Court should also consider the harms caused to the specific victim of Defendant's crimes whose Social Security application and accompanying driver's license were never received by the Social Security Administration, but were apparently intercepted by Defendant (who maintained images of this application and driver's license on her Google Drive account). PSR ¶¶ 27, 33.

For these reasons, and those to be discussed at the sentencing hearing, the United States submits that a sentence above the low-end of the guideline sentencing range is warranted in this case.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: /s/ *William F. Abely*
　　 WILLIAM F. ABELY
　　 Assistant U.S. Attorney
　　 U.S. Attorney's Office
　　 William.Abely@usdoj.gov

Date:  April 15, 2022

## CERTIFICATE OF SERVICE

      I hereby certify that this document will be filed via ECF and thereby served on all counsel of record, and will also be sent via email to U.S. Probation.

                                      /s/   *William F. Abely*
                                      William F. Abely
                                      Assistant United States Attorney

Date:  April 15, 2022